CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2010
Decided June 24, 2010

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 07-3865 | |
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | |
| | No. 05-CR-1025-1 |
| WALTER SLOAN,<br>    *Defendant-Appellant*. | Ronald A. Guzmán,<br>*Judge*. |

**O R D E R**

    A jury found Walter Sloan guilty of bank robbery, 18 U.S.C. § 2113(a), and the district court sentenced him to 100 months' imprisonment. Sloan appeals, but his appointed counsel moves to withdraw because he cannot identify any nonfrivolous argument to pursue. *See Anders v. California*, 386 U.S. 738 (1967). Sloan has not responded to our invitation to comment on counsel's submission, *see* CIR. R. 51(b), so we limit our review to the potential arguments identified in counsel's facially adequate brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

No. 07-3865                                                                                                         Page 2

On December 16, 2005, a man approached a teller at a TCF Bank branch in a Jewel/Osco supermarket in Hickory Hills, Illinois, and demanded the money in the teller's drawer. The man threatened the teller, Saif Yasin, and displayed from his waistband what the teller believed to be the handle of handgun. Yasin gave the robber money from his cash drawer. After the robber fled, the bank supervisor called 911, describing the robber as a six-foot tall white male wearing a red and black farmer's button-up. The teller also said the man smelled of alcohol.

The first officer, Detective Joseph Roscetti, testified at Sloan's trial that he quickly arrived at the scene and was pointed by two witnesses in the direction of an alley behind the strip mall. He soon saw a man, later identified as Sloan, fleeing down the alley. Another officer cut Sloan off from the opposite end of the alley. Sloan initially refused to take his hands out of his pockets and was forcibly subdued, sustaining injuries to his face. He had no wallet, money, or identification with him, but a search of the area near the northwest corner of the alley revealed a blue and gray plaid jacket with two white work gloves in the pockets and an air pistol. Officers also found $678 in currency behind a storage container in the alley. DNA samples recovered from the blue jacket were later tested and matched Sloan's DNA. No usable prints were found on the weapon and none of the usable prints found on the money matched Sloan's.

Because Sloan sustained injuries during his arrest, an ambulance was called to the scene. Officers at the scene brought Yasin to the ambulance to conduct a "show-up identification." Officers positioned Yasin where he could see Sloan through the window of the ambulance, and he positively identified Sloan as the robber. Sloan was later indicted for bank robbery.

At trial a key dispute arose over why Sloan's DNA was found on the blue jacket. Sloan contended that the jacket, which was found with the air pistol, was not his and that any trace of his DNA on the jacket resulted from the officers' forcing the jacket upon him for the show-up identification. The officers involved all denied doing this. Sloan's alibi was that he was at the Jewel that day to buy a beer and to search the dumpsters in the alley for scrap materials.

In rebuttal, the government introduced a recording of a telephone conversation between Sloan and Lisa Garner, his long-time girlfriend, to impeach Sloan's testimony that the blue coat found with the weapon at the scene was not his. The officers and FBI agent who transferred Sloan to the Metropolitan Correctional Center ("MCC") testified at trial that they inadvertently left the red and black farmer's button-up Sloan was

No. 07-3865 Page 3

wearing on the night of the robbery in the bag transferring his personal possessions to the MCC. Sloan requested that his personal possessions be sent home and then a few days later called Garner to instruct her to dispose of the jacket. This conversation was recorded as a matter of course and the portion introduced supported the government's contention that Sloan had directed Garner to dispose of the red jacket and that both Garner and Sloan understood him to possess both red and blue coats on the night of the robbery.

After brief deliberation, the jury convicted Sloan.

Counsel first considers whether Sloan could challenge the sufficiency of the indictment against him. An indictment is sufficient if it: (1) correctly states the elements of the offense, (2) provides the defendant fair notice of the charges against him, and (3) permits the defendant to plead the judgment on the offense as a bar to future prosecution. *See United States v. Singleton*, 588 F.3d 497, 499-500 (7th Cir. 2009); *United States v. Dooley*, 578 F.3d 582, 589-90 (7th Cir. 2009). There is no question that the indictment here was proper: it correctly listed the elements of § 2113(a), the statute under which Sloan was charged, and included the time and place of the robbery alleged, giving Sloan ample notice of the charges against him.

Counsel also considers whether Sloan could argue that the government failed to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), to turn over all evidence or information that impeached its planned witnesses. According to counsel, Sloan believes that the government withheld additional tape evidence. But counsel admits that he knows of no basis for this assertion and that the nature or contents of any alleged undisclosed tapes are not known to either Sloan or counsel. Any argument based on a bare allegation of a *Brady* violation, without a clear statement of what was withheld or how it prejudiced Sloan, would be frivolous. *See United States v. Jumah*, 599 F.3d 799, 809 (7th Cir. 2010); *United States v. Driver*, 798 F.2d 248, 251 (7th Cir. 1986).

Counsel next considers whether Sloan could challenge aspects of his trial, such as the government's opening and closing remarks. When reviewing such matters, we would first determine whether the remarks in question were improper, *see United States v. Clark*, 535 F.3d 571, 580 (7th Cir. 2008); *United States v. Corley*, 519 F.3d 716, 727 (7th Cir. 2008), and if they were we would consider whether they prejudiced the defendant. *See Clark*, 535 F.3d at 580; *Corley*, 519 F.3d at 727. But counsel can identify no incendiary or improper remarks; any argument that the remarks were improper would be frivolous.

No. 07-3865 Page 4

Counsel then considers whether Sloan could challenge the district court's inclusion of two supplemental jury instructions—one admonishing jurors not to speculate why others mentioned at trial were not also being prosecuted and another admonishing jurors not to speculate as to the punishment Sloan would receive if convicted. Counsel correctly notes that because neither instruction mischaracterizes the law, any argument against their inclusion would be frivolous. *See United States v. Ye*, 588 F.3d 411, 414 (7th Cir. 2009); *United States v. Thornton*, 539 F.3d 741, 745 (7th Cir. 2008).

Turning to post-trial motions, counsel next considers whether Sloan could challenge the district court's denial of his pro se motion arguing several evidentiary issues. But Sloan was still represented by trial counsel when he filed the pro se motion, and under such circumstances the denial of that motion was well within the wide discretion afforded district courts. *See United States v. Patterson*, 576 F.3d 431, 436-37 (7th Cir. 2009); *United States v. Gwiazdzinski*, 141 F.3d 784, 787 (7th Cir. 1998).

Next counsel considers whether Sloan could argue that the government presented insufficient evidence to convict him. When reviewing such an argument, we would evaluate the conviction viewing the evidence in the light most favorable to the government, and reverse only if no rational jury could have found the defendant guilty beyond a reasonable doubt. *Ye*, 588 F.3d at 417. Such an argument, we have noted, presents defendants a "nearly insurmountable hurdle." *See United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009) (quotation marks and citations omitted).

Ample evidence connected Sloan to the crime. Sloan was apprehended near the crime scene within minutes of the robbery and, with minor differences, matched the description of the robber given by the victim teller and shown on video surveillance. The blue jacket, which was found with the air pistol and gloves, was later determined to contain Sloan's DNA. And the MCC telephone recording supported the government's theory both that Sloan sought to destroy the jacket he was wearing the night of the robbery and that he had worn a blue coat the night of the robbery. The amount of money recovered, just a little further down the alley, was roughly consistent with the amount of money taken from the teller's drawer ($678 was found and $707 was reported missing). And while the robber was described to the 911 operator as wearing a black and red coat, the bank video, though grainy, supported the conclusion that the robber was wearing the blue and gray coat at the time of the robbery, lending credibility to the government's contention that Sloan wore the jacket during the robbery and later discarded it along with the air pistol. A reasonable jury might well have disbelieved

Sloan's version of events, and so any challenge to the sufficiency of the evidence against him would be frivolous.

Counsel also considers whether Sloan could argue that the district court erred by admitting into evidence portions–but not all–of the telephone conversations between Sloan and his girlfriend. Trial counsel argued in his motion for a new trial that the admission of selected portions of these conversations violated the doctrine of completeness as expressed in FED. R. EVID. 106. But in order to prevail on such an argument, Sloan would have to show both that the additional evidence was relevant and that it would clarify the evidence presented by the government, *see United States v. Price*, 516 F.3d 597, 605-06 (7th Cir. 2009); *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996); he cannot. As counsel points out, the motion for a new trial presented no reasons why the remaining portions of the recordings were relevant beyond the vague assertion that they would have contextualized the conversations. Thus, any argument regarding the admission of partial recordings would be frivolous.

Counsel next turns to Sloan's sentencing and first considers whether Sloan could challenge the district court's calculation of his offense level. Specifically, counsel considers whether Sloan could challenge the two-level increase he received for obstruction of justice, *see* U.S.S.G. § 3C1.1, because Sloan instructed Garner to destroy the jacket that he wore the night of the robbery (and which had been inadvertently returned to him by mail while he was held at the the MCC). But counsel rightly decides that such an argument would fail. *See* U.S.S.G. § 3C1.1, App. Note 4(d) (noting that "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding" is an example of obstructive conduct); *United States v. White*, 406 F.3d 827, 834 (7th Cir. 2005). Sloan did not deny that he instructed Garner to destroy the jacket; he merely stated that it was his right to destroy his own property. But that is irrelevant to whether the jacket was material to the investigation; it was. Any argument otherwise would be frivolous.

Counsel similarly considers whether Sloan could challenge the district court's calculation of his criminal history, but again any such challenge would be frivolous. The majority of Sloan's objections to various criminal history points were made without support and, though he objected to some of the prior offenses listed in his presentence report, none would have resulted in his receiving fewer criminal history points. *See* U.S.S.G. § 4A1.1(c) (permitting a maximum of 4 criminal history points for prior sentences not counted under U.S.S.G. § 4A1.1(a), (b)).

No. 07-3865 Page 6

Counsel then examines whether Sloan could challenge his sentence as unreasonable. But we would presume Sloan's 100-month imprisonment term–the bottom of the guidelines range of 100 to 125 months–to be reasonable, *see United States v. Welton*, 583 F.3d 494, 496 (7th Cir. 2009); *United States v. Noel*, 581 F.3d 490, 500 (7th Cir. 2009), and counsel has identified nothing to rebut this presumption.

Finally, counsel considers several potential arguments about the ineffective assistance of trial counsel. Counsel correctly notes, however, that Sloan should save such claims for collateral review, where a complete record can be developed. *See United States v. Recendiz*, 557 F.3d 511, 531-32 (7th Cir. 2009); *United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005).

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.